The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Be seated, please. Good morning. We'll begin this morning with Diaz-Hernandez, Garland, and Mr. Birch. We'll hear from you first. Thank you, Your Honors, and may it please the Court. My name is Jake Schatzer. Oh, okay. I call him Mr. Birch. He's present, Your Honor. Yeah, he was going to introduce you with a big flamboyant introduction, but I gather you're arguing as a student at the program there. Yes, Your Honor, that's right. We're glad to have you. Go ahead. Okay, thank you. And I represent El Cienisay Diaz-Hernandez. Our clients were persecuted by their uncle in El Salvador after their mother played a role in his deportation from the United States. The agency, however, denied their applications for asylum. Do you know if the uncle ever abused them before he was deported? We do not, Your Honor. He was in the United States, and so the record reflects that the abuse began once he had the opportunity to access them in El Salvador, because that's where the children were living. And so when the agency considered this question of whether, under the asylum statute, one central reason for the abuse was the children's ties to their mother, the agency committed an error that this court has… The agency actually didn't use the words one central reason, did it? The agency, the I.J. just said the reason. That's correct, Your Honor. And not only the I.J., but the B.I.A. made the same error on page 19 of the joint appendix, adopting that same language, saying the reason was drugs and alcohol. And this court has repeatedly instructed that that's not the proper inquiry, that the one central reason standard, the statute, and this court's cases all say there could be multiple central reasons. And so here, when the agency latched on to one reason and said that's the reason, that was legal error. And not only did the agency just determine… Wasn't that factual error? Or alleged factual error? In other words, he made a factual finding that that was the reason. Is there a problem with that? There is, Your Honor, and this court in Vasquez v. Garland said that whether the right question is asked is a legal question that's reviewed de novo, whereas the answer to the right question is reviewed for substantial evidence. And so our position is that here, the I.J. asked the wrong question of whether there was one reason instead of were family ties a central reason. I know, but my question is if you have several possible reasons advanced and the fact finder says the reason was actually this, that's a factual finding, isn't it? I don't think so, Your Honor, just for the reason I articulated, but I don't want to push… as possible reasons. I mean, there was a suggestion here that he was retaliating against the children, but the I.J. didn't buy that for a lot of reasons and didn't buy it as a factual matter. I think that's accurate, Your Honor. The issue here is that even if we're talking about it as a factual question that's reviewed for substantial evidence, the I.J., under this court's precedent, still has to offer specific, cogent reasons for rejecting evidence, and that didn't happen here. The I.J. on JA-94, the only mention of family ties, it says even if he did mention the fact his sister was instrumental in him being deported… So what exactly is the particular social group here? The I.J. defined the social group as being the children of Cezia Hernandez. So arguably our particular social group jurisprudence has gone somewhat afar from other circuits, but assuming it's a valid particular social group and your clients are part of it, just out of curiosity, would the mother be able to claim the same thing? I'm not sure I 100% follow the question, Your Honor. I think if… Well, the two children in El Salvador say we're part of this particular social group, that's why we were persecuted. But would the mother be part of the same social group? Because it seems like to me it begins to lead down the path where almost every act of domestic violence in another country creates some sort of particular social group. Sure. So I think if the group were defined as her nuclear family, she could be included. But with the facts in this case, the persecutor is targeting the children to get revenge on the mother. And so unlike an intra-family dispute, such as the cases of Toledo-Vasquez or Velazquez, where the petitioner in those cases did something to the persecutor that triggered the violence, here, El Sinisay didn't do anything. They were an outlet for the uncle to get revenge on himself. But the mother did do something. She ratted out her brother and so he got deported. So that would seem to put her in a different category than the children, which may just show the anomaly that the children could qualify, but the mother could not. I think that's right, Your Honor. The mother, there is certainly a dispute there because she played a role in his deportation. And so if it were her that were harmed, then we might not meet nexus. But here, the children have a bond with their mother. That's family ties. And that reason being revenge, this case is sort of... You keep putting the children together, but the sister was never, the daughter was never abused by her uncle, correct? What are we to do with her petition since he never abused her? So the uncle never physically abused Elsie. I think the government's position that we can simply excise her from this abusive household just doesn't hold up because she is witnessing her brother's near daily beatings. Her uncle is telling her, your mother doesn't love you. She abandoned you here. That's why you're here. And there was one instance where she attempted to defend her brother. She was tired of her uncle treating him this way, and the uncle pursued her, attempted to do physical harm to her, but the grandparents intervened. Right, attempted to do physical harm to her because she hit him with a broom, not necessarily because her mother had had him deported. That's sort of a problem with the sister's petition, isn't it? No, Your Honor, I don't think so for the reasons I articulated. I think the fact that, especially given this court's precedent in Portillo-Flores, that we look through the eyes of the individual at the age they are. Elsie's 13 at the time, and she's witnessing this happen to her brother almost every day. That's at least enough for a well-founded fear of persecution, and the agency only decided this case on the nexus ground. Was it a well-founded fear of persecution of her brother or for her? For her. And what is that? Is her persecution simply watching her brother be beaten? I do think there's also emotional and psychological abuse there. Well, that would flow from that, wouldn't it not? I'm sorry, Your Honor? I said those conditions would flow from the fact she was witnessing the abuse of her brother. Yes, but I don't think that makes them less abusive of her, and especially when the threshold for a well-founded fear is as low as 10%, and we know the uncle had no qualms about assaulting adult women. Here he targeted the male child physically, but not the female child. I know the mother said that the uncle said he would get revenge on her through beating her children, but the mother also said that he beats everybody up when he does drugs and drinks. What are we to do with that? The fact that a persecutor has multiple victims of violence doesn't mean they can't persecute someone, and so Salgado Sosa is a case that illustrates that point really well, because there this court was dealing with MS-13, which is known to be generally violent and do violence to people across the community, but you have to ask why was this particular person targeted and look at the reasons that the persecutor had, and in Salgado Sosa the court said that there it was the petitioner's stepfather that the gang initially targeted, and then they began to target the stepson to use him as leverage against the stepfather, and that was... Because they're intertwined, because you look to not a reason, but one central reason, correct? That's correct, Your Honor, even if they're intertwined. Did the IJ ever articulate the correct legal standard, the one central reason? No, Your Honor, the IJ did not do that. The IJ in her decision said the reason, and that was it, and the analysis... Well, the IJ, to be a little fuller, the IJ went through all the people he had attacked and concluded that he did not harm Elsa, and concluded that he attacked only when drinking or on drugs, and that otherwise he was fine, and found that while there was some mention made on it, the court... This is what the court's opinion says. The court finds that even if he did mention the fact that his sister was instrumental in him being deported, that that was not the reason for his aggressive behavior. That was the factual finding, and the court... There's a whole page directed to why the court reached that reason. That's a factual question, and the question then is how do we handle that? Of course, this is the IJ, and the BIA opinion is what we review. So a couple points there, Your Honor. To Judge Thacker's point, the incorrect legal standard is in that analysis. The IJ says the reason, and doesn't consider multiple reasons. So the IJ says...  It acknowledged it right in that sentence, that there was an argument that the reason was that because it was retaliatory, and that IJ rejected that, and explained why it rejected that, and said the reason why he was doing it, because he was an aggressive person when he drank and had drugs, and listed numerous people in the park, sister, everybody who he abused while in that condition, and the son, of course, but concluded also that he did not harm Elsa, and that was indicative of the fact that it wasn't the retaliatory motive, but the real reason was because he was an aggressive person. So on those points, the IJ, even though it walks through that analysis, talks about all those other people, the question is about why this person, not somebody else. And so in going through that analysis, it's not addressing... It's not analysis, it's fact-finding. There's no legal analysis. There's no case cited there. The court's going factually through what happened, and then reaches a conclusion as to what the motive was based on that. And that's the difficulty. I mean, I know it was raised on appeal that the central issue, I think we're bound by... Well, Judge King actually had a footnote where he equated the reason with the central reason, and we've done that in many cases, and there's a good argument for that because if you were interpreting just a reason in the one statute, you would have to conclude it had to be a substantial reason because you wouldn't apply the most tangential reason. There has to be a limit at some point. So if you interpreted a reason to mean a substantial reason, you're right back to the statute, the other statute, which says a central reason. But you raised this for the first time on appeal, and it wasn't presented before the BIA, and the BIA didn't allow you to present that. So I'm not sure we have that before us. Right. So I want to distinguish between the A reason argument with withholding and just the asylum, one central reason. And so focusing on asylum and one central reason, it's the same answer I had before that. Even though the factual findings are happening, the IJ says this was the reason and doesn't, as this court instructed in Ai Hua Chin v. Holder, doesn't offer specific reasons for rejecting the evidence in this case, which is not only the statement to the mother, but also Isai's testimony at JA 204 that the uncle would sometimes say, because of her fault, they sent me back as he began to beat him. And so that evidence, along with three family members who were in the household that submitted affidavits saying that he wanted revenge on the mother, they feared for the children's safety because of that, all of that together was dismissed by the IJ in this even if he did mention statement, and this court has said there has to be specific reasoning for not addressing, for not believing such evidence that bears on the relevant question. To briefly talk about withholding statute, and I'll go more into that in rebuttal as well, but the withholding statute uses unambiguously different language from the asylum statute. It says a reason, not a central reason. And not only are the plain meanings of those phrases different, the Congress in 2005, when it amended both these statutes, said cross-referenced two sections of the asylum statute about sustaining the burden and the credibility determination. But they did not cross-reference the first subclause right next to those other two that establishes the one central reason standard. And the Supreme Court has instructed that where Congress includes particular language in one section of a statute, but omits it from another section in the same act, that that exclusion has to be presumed to be intentional. And that is what the Sixth and Ninth Circuits have held on this issue, that that structure of the statute and the plain meaning has to be given effect that a reason is necessarily lower than a central reason. And for those reasons, the court should reverse the decision below. All right, thank you. You have some rebuttal. We'll hear back from you in a minute. Mr. Tucker. May it please the Court, Colin Tucker for the Attorney General. The sole question that's probably before the Court in this case is whether a protected ground was or will be at least one central reason for the harm that the petitioners feared. So you just used the term one central reason. Did the IJ ever utilize that legal standard? Your Honor, there are two points I'd like to direct the Court to on that. And could you maybe either move the mic? You're not picking me up very well? Better?  Two points I'd like to address on that, Your Honor. First, there is a legal addendum attached to the immigration judge's decision that explicitly identifies the one central reason standard of review. That is at page 106 of the Joint Appendix. Page what, 106? Yes. The second point I'd like to make is that in the immigration judge's decision itself, she refers to the protected ground being an incidental or tangential reason. That is language that explicitly refers to this Court's one central reason jurisprudence and demonstrates that that's the standard that was applied here. So does the IJ use one central reason? I mean, is that term, I mean, I haven't read this. I do not believe that the phrase one central reason appears in the immigration judge's oral decision, Your Honor. I've looked over the BIA opinion, and I don't see that in there either. I believe it is in the BIA decision, Your Honor. Just bear with me for a moment. At JA19, there is a reference to, in a parenthetical, there is a reference to one central reason standard applying. All right, I see it. As regards to one central reason standard? Well, it's applying CTL. Correct. CTL equated the two. Yes. And I don't know if we have that issue before us legitimately at this point, but if we were construing just the withholding language, which is a reason, we would still have to reach some meaning to a reason. It wouldn't be the most tangential and immaterial reason. We'd have to cut it off at some point. And my suggestion would be that if we were just interpreting that, the breadth of reason, we would have to conclude it had to be a substantial reason, a contributing reason of some sort. I suppose in principle, Your Honor. But we have in our court equated the two just as CTL has. Correct, Your Honor. And I suppose in principle I agree with you, but as you know the government's position on this issue is that it was not properly exhausted at the agency level, and therefore the only question before the court today is whether the protected ground is one central reason for the harm. The agency always has to apply the correct legal standard, don't they? Yes, Your Honor. Which is why this addendum you pointed me to, it's called the standard language addendum, where it lays out what the law is basically and what the IG was supposed to be doing on the one central reason analysis. So where in the IJ's actual opinion, not the addendum, does the IJ go through the one central reason standard and apply it? Well, I think the JA94, Your Honor, where the IJ describes the protected ground as being only a reason. No, the portion where she refers to it as being only tangential or subordinate reason, which, again, refers to the one central reason standard. I would point out that also I think that this court, in the footnotes that were mentioned by Judge Gee, has equated a reason and one central reason standard, and therefore it's not unexpected that the immigration judge would use a similar language. So your view is that when an immigration judge uses the incidental or tangential reason in making their analysis, that that incorporates the one central reason standard? Yes, Your Honor. It demonstrates a mixed mode of analysis, which is one step under the one central reason analysis. Now, in terms of substantive evidence standard applying here for one central reason, there are three different types of evidence that the immigration judge properly cited for finding that the protected ground is not one central reason for the harm feared. The first is that what we have here is a social group of two people, and one person in the group was never harmed by the uncle, despite the fact that the uncle had every opportunity to do so. The second evidence is the timing of the violent outbursts. And that's the sister, right? Correct, Your Honor. Yes. The second piece of evidence is the timing of the violent outbursts. The uncle was described as being a good guy and fine when he was not under the influence of drugs and alcohol. The only time he was violent, with no rhyme or reason in terms of target, was when he was under the influence. Finally, there's the fact that the uncle targeted numerous people who are not members of this group. And we know from this Court's case law, more specifically I believe the recent cases, Toledo-Vasquez, that targeting non-members of the group can be probative with respect to whether other harm was inflicted on account of group membership. Returning to the withholding of removal standard, that the government's position was not exhausted, just a few points on that. I do not believe petitioners have identified any valid reason for not abiding by the exhaustion requirement in this case. First, their claim that the Board actually did address this issue on the merits is unavailing for the reasons set forth at pages 28 to 29 of the Respondent's Brief. Second, the Board had no notice of the argument in a context that it was required to address, and it certainly had no reason to suspect that this Court would address the argument in the first instance if it declined to do so in the context of the motion to reconsider. Third, we do not actually know what the Board would have said had it addressed this argument. Fourth, the assertion that legal standard arguments need not be exhausted finds no support in the statute or in the case law. The cases that are cited to the contrary by petitioners all concern whether a standard of review argument was waived in the circuit court as opposed to the statutorily mandated exhaustion requirement at the agency level. I'm going back to the analysis. The IJ found the petitioners credible. So why isn't the fact that the mother and the petitioners said that the uncle was beating them as revenge for his deportation sufficient for them to have met their burden? Your Honor, I think that under different circumstances, it could be treated as sufficient. I think a reasonable immigration judge could have looked at this case and decided that one central reason standard was satisfied here. But the fact is there is also evidence that cuts against the one central reason standard being satisfied. And under the standard of review, the only question is whether there is substantial evidence that supports the agency's decision. Here, for the reasons I've identified, I believe that there is. And that was that list you just went through. Correct. Not the exhaustion list, but the first list I went through. I'm prepared to conclude if there are no additional questions. All right. Thank you very much. In conclusion, the government asks that the court uphold the agency's decision. Thank you, Mr. Tucker. Okay, Mr. Schatzer, I'll hear from you. Thank you. On exhaustion, this court said in Mejia v. Sessions that in order to exhaust, it doesn't have to be raised before the board if it would be futile to do so. And in this case, it certainly would have been. The matter of CTL decision has been on the books for over 13 years, and we gave the agency the opportunity to address it in this very case. My friend on the other side says that we don't know what the agency would have done if it were properly confronted with the argument. We know exactly what it would have done, because in the motion to reconsider, despite saying it didn't have to address it, the board went on to address it and said that we're not going to adopt persuasive authority from the Sixth and Ninth Circuits. We're going to stick with matter of CTL. And the point of exhaustion is to get the agency's expertise and view on a certain issue. We've known that view ever since matter of CTL. Unless a circuit court has overruled it in their jurisdiction, the agency's continued to apply it. So exhaustion, for that reason, would have been futile. But even in this case, we gave the board a chance to address it in the motion to reconsider, and the board did address it, though briefly, on the merits, and said that it would stick with CTL. When you stood up before at the end of your argument, you said you were asking us to reverse. Do you want us to remand back to the BIA and IG to implement the correct legal standard, or what do you want us to do? So reversal would be preferred. This court said that typically the remedy is vacate or remand so the correct legal standard can be applied. We would grant the petition for review, correct? That's what you want us to do? Yes. The only distinction after granting the petition is whether it's vacate and remand or reverse. And in exceptional cases where the evidence is such that no rational fact finder could conclude otherwise, it is appropriate for this court to reverse. Why is the evidence such that no rational fact finder could conclude otherwise when there are facts cutting both ways? Because those facts that are said to cut the other way are about other people and other reasons. When you ask the right question of what was family ties to the mother a central reason, the evidence is very strong that it is. We have the affidavits, the children's testimony, the mother's testimony about the uncle's own statements. Did the uncle only beat the son after the uncle had been drinking and doing drugs or just any old time? The record reflects that it was after using drugs and alcohol. But there can be multiple central reasons. And so if drugs and alcohol is the central trigger, we don't really dispute that. But even if there's an immediate trigger, there can be another central reason. And we know that drugs and alcohol heighten emotions that are already. If you look at the trigger, you have to see what's fired. What's fired is abuse against anybody who's around him, including the son but including a bunch of other people that were witnessed. And it seems to me this is just so highly factual that how can we get and second-guess that when our standard of review is almost conclusive? If the court thinks the evidence isn't strong enough to reverse, then I think at least remand under the right legal standard is necessary because as Judge Thacker's questions have pointed out, the IJ and the BIA both said the reason. And there is that addendum of law, but that is boilerplate language, and we can't just assume from that being present that the right standard was applied. The government says that in the IJ's opinion when they refer to an incidental and tangential reason that that encompasses by necessity the one central reason standard. Do you agree or disagree? So I agree that the court has defined not central as being tangential, secondary, et cetera, but the focus on saying the reason still gets the analysis wrong, and under the substantial evidence standard where the IJ... I don't understand that logic. If the fact finder says there is one reason, this is the reason, we're not now questioning that it had to be the central reason logically, as a matter of logic. The IJ excluded the other reasons factually and said the reason was because he was an aggressive person only during drinking and alcohol and that it was not focused on even on the social group that was identified. And logically, the reason, when you make find the reason and exclude tangential reasons, which the IJ did, it seems to me it necessarily incorporates the central reason or a central reason. I see I'm out of time, Your Honor. May I briefly reply? We know that it's not the reason because of everything the uncle said. We know that there is this other reason, and the IJ has to determine whether that reason is central, and that's... You're now arguing the facts, and we're only allowed to review the facts if there's no evidence to the contrary and a reasonable fact finder would be compelled to find those facts. And that standard, we're just not in that realm of finding facts of the IJ. If I may reply again, Your Honor. So there is fact finding, but there is also the requirement when you look at the full substantial evidence standard that it's considered on the record as a whole,  and I cite IHWA Chin versus Holder for this, has to address the specific reasons for rejecting relevant legally significant evidence and all of the evidence that I've outlined, the three affidavits, the testimony, none of that was specifically addressed by the IJ here. Okay, thank you. Thank you. We'd like to recognize the service you're providing as a student. You did a fine job. We'll come down and greet counsel and then proceed on to the next case.
judges: Paul V. Niemeyer, G. Steven Agee, Stephanie D. Thacker